## SMITH *vs.* MOORE.

[EQUITABLE ATTACHMENT.]

1. *Bequest to trustee, for comfort and support of debtor, but not liable for his debts, subject to equitable attachment.*—Where a sum of money is bequeathed to a trustee, in trust for a debtor, " not subject to any debt or debts he may have contracted, but for his comfort and support," it may be subjected by equitable attachment (Code, § 2956) to the payment of his existing debts.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Amos Moore, against William G. Smith and Thomas H. Smith; and sought to subject to the payment of a debt, due and owing to the complainant by said William G. Smith, a fund which was in the hands of said Thomas H. Smith, as trustee of said William G., under the following clause in the will of their deceased father, Guy Smith, to-wit: "I further give to my

son, Thomas H. Smith, in trust for my son William G. Smith, the further sum of thirty-six hundred dollars, not subject to any debt or debts he may have contracted, but for his comfort and support; and should he depart this life before receiving the same, then, and in that event, the thirty-six hundred dollars to be equally divided with my other children in life; and if any should be dead, their share to their child or children." The testator's will was executed in Georgia, where he resided; and was duly admitted to probate there, after his death, in July, 1857. The complainant's debt against William G. Smith was evidenced by a promissory note, dated the 14th April, 1852, and payable on the 1st November next after date. The fund sought to be reached was paid over to Thomas H. Smith by the administrator in Georgia, and was in his hands at the commencement of the suit. The prayer of the bill was for an equitable attachment, an account, and general relief. A decree *pro confesso* was entered against William G. Smith, on publication duly perfected against him as a non-resident. Thomas H. Smith answered, admitting the material allegations of the bill; but insisting that neither the principal nor the interest of the fund in his hands was liable to the complainant's demand, and demurring to the bill for want of equity. On final hearing, on pleadings and proof, the chancellor held, that the entire fund, both principal and interest, or as much thereof as was necessary, was liable to complainant's debt. He therefore overruled the demurrer, and rendered a decree for the complainant; and his decree is now assigned as error.

CLOPTON & LIGON, for appellant.—1. If William G. Smith was entitled to the possession of the money, and could sue for and recover the same from the trustee, (as the chancellor held,) then the complainant had a full, complete, and adequate remedy at law, by attachment and garnishment.—*Hall v. Magee*, 27 Ala. 416; *Harrell v. Whitman*, 19 Ala. 135. Such a construction, however, would render the trustee a mere conduit, through which the money

was to pass from the executor to William G. Smith; and his appointment would be a useless and nugatory act. On the contrary, the interposition of the trustee was neces-- sary, to receive the fund, to apply the income arising from. it·to the comfort and support of the legatee, and to pre- serve the fund for the contingent remainder-men; and his title does not cease until these objects are fully accom- plished.—*Comby v. McMichael*, 19 Ala. 747.

2. The broad doctrine was at one time maintained in England, that every right to property, both legal and equi- table, must be subject to the incidents of property—aliena- tion, and the payment of debts; and this was put upon the ground, that it was against public policy, and a fraud on creditors, to allow property to be held by a debtor, or in trust for his use and benefit, without being liable to the payment of his debts. But modern decisions in England, and more particularly in America, have greatly restricted and qualified this doctrine; and the principles upon which these latter cases rest, commend themselves by their cor- rect reasoning, and by their enlightened views of public policy. No principle of public policy is contravened, by a father, while living, supporting an indigent or an improvi- dent child; and it is difficult to see what principle forbids that, after his death, his bounty should be expended in the same way, through the agency of an executor or trustee. Creditors have no claim on the father or testator, and their rights are not prejudiced by his bounty to their debtor: on the contrary, they may be greatly benefited thereby. These views are elaborated, and maintained by unanswer- able arguments, in *Hill and Wife v. McRae*, 27 Ala. 182; and in *Braman v. Stiles*, 2 Pick. 463. An examination of the more modern leading cases, both in England and in America, will show, that wherever a right in the property itself, or its proceeds, is vested in the debtor, the same is subject to his debts; but that the words, "support and maintenance," "comfort and support," &c., do not vest such an interest in him as can be reached by his creditors. *Twopenny v. Peyton*, 10 Sim. 487; *Godden v. Crowhurst*,

*ib.* 642 ; *Stagg v. Beckman*, 2 Edw. Ch. 89 ; *Ashurst v. Given*, 5 Watts & Serg. 323 ; *Vaux v. Park*, 7 Watts & Serg. 19 ; *Fisher v. Taylor*, 2 Rawle, 33 ; *Norris v. Johnson*, 5 Barr, 289 ; *Eyrick v. Hetrick*, 13 Penn. 491 ; *Pope v. Elliott*, 8 B. Mon. 56 ; 2 Beavan, 63 ; 18 Vesey, 429 ; 5 Paige, 583. In this case, besides violating these general principles, the chancellor's decree operates to defeat the rights of the contingent remainder-men.—*Williamson v. Mason*, 23 Ala. 503 ; *Elmore v. Mustin*, 28 Ala. 313.

N. S. GRAHAM, *contra*, cited *Rugely & Harrison v. Robinson*, 10 Ala. 731 ; *Robertson & Pettibone v. Johnston*, 36 Ala. 197, and the authorities therein cited.

A. J. WALKER, C. J.—It is clear that the testator intended to make the specified fund free from liability to the debts of Wm. G. Smith ; and it is almost equally clear, that the law forbids the accomplishment of the purpose. The fund itself, not merely the interest, is devoted to the "comfort and support" of the *cestui que trust*. This is not only the necessary effect of the terms, in which the gift of the fund, in trust for his comfort and support, is made ; but it is clearly implied from the making his death, without receiving the fund, the contingency upon which the limitation over depends. The fund is not given to the trustees, to enable them to support the *cestui que trust:* the money itself is given in trust for Wm. G., for his comfort and support ; and he has, undoubtedly, the right to receive for his comfort and support the entire fund, with its accumulations, if necessary. Can it be that a fund, from which one has thus a right to draw for his comfort and support until it is exhausted, is exempt from all liability to his debts ?

We shall not deny, that decisions made in Pennsylvania go to the extent of holding property thus situated free from liability to debts.—7 W. & S. 19 ; *Ashurst v. Given*, 5 W. & S. 323 ; *Norris v. Johnston*, 5 Barr, 287 ; *Holdship v. Patterson*, 7 Watts, 547 ; *Fisher v. Taylor*, 2 Rawle, 33 ;

*Eyrick v. Hetrick,* 1 Har. 488. And a case in Kentucky, and another in Massachusetts, go very far in the same direction.—*Pope v. Elliott,* 8 B. Mon. 56 ; *Braman v. Styles,* 2 Pick. 460. But the Pennsylvania decisions make a palpable innovation upon the law as long established in the English court of chancery, and it is so avowed by the opinion in *Norris v. Johnston, supra.*—1 White & Tudor's Leading Cases in Eq. 544 ; Notes of Hare and Wallace to *Hulme v. Tenant.*

The English doctrine "forbids the disposition of property, divested of its legal incidents" of liability to debts, and susceptibility of alienation.—1 Jar. on Wills, 816 ; Hill on Trustees, 395. And under the operation of that doctrine, a liability to debts, to the extent of the debtor's interest, has been enforced, in the cases following, to-wit : Where the dividends were directed to be paid into the proper hands of a man, or on his own proper order or receipt, and not to be assignable by way of anticipation (*Brandon v. Robinson,* 18 Ves. 429) ; where an annuity was given in trust for the maintenance and support of the *cestui que trust,* not to be liable to his debts, and to be paid, from time to time, into his proper hands, and not to any other person (*Graves v. Dolphin,* 1 Sim. 66) ; where an annuity was bequeathed in trust, with directions for the payment of dividends for the sole purpose of the maintenance and support of the legatee and his family, and with a prohibition of alienation and liability to debts (*Yarnold v. Moorehouse,* 1 Russ. & Myl. 364) ; where property was held in trust, to be applied in such manner, and to such persons, for the board, lodging, and subsistence of the donee and his family, as the trustees should think proper (*Rippon v. Norton,* 2 Beav. 64) ; where there was an assignment to trustees of a fund in trust during the life of H, or such part thereof as they should think proper, and at their will and pleasure, and at such times and in such sums as they should deem expedient, to pay the interest to him, or, at their discretion, to expend the interest in procuring for him diet, lodging, wearing apparel, and other necessaries, so that the

same should not be subject to his debts or disposition (*Snowden v. Dales,* 6 Sim. 524) ; and, lastly, where property was conveyed. to trustees, to pay and apply the rents and profits to the support of J., his wife and children, with a prohibition against any charge, or assignment, or anticipation by J.

It is difficult to reconcile the two cases of *Twopenny v. Peyton,* (10 Sim. 487,) and *Godden v. Crowhurst,* (*ib.* 642,) with the other English decisions, or with the proposition, that the *cestui que trust* in this case has an interest liable to his debts. We refer to the discussion of those two cases by Judges Ormond and Goldthwaite, in *Rugely & Harrison v. Robinson,* (10 Ala. 702,) where an attempt has been made to place them in harmony with the other decisions. See, also, Hill on Trustees, 395, note x. In *Younghusband v. Gisborne,* (1 Col. 400,) there was a trust for the personal support, clothing, and maintenance, with a provision that the fund should not be subject to the debts of the *cestui que trust.* The fund was held 'subject to pass to the assignees under the insolvent debtors' act ; and the vice-chancellor, in commenting upon the cases of *Twopenny v. Peyton* and *Godden v. Crowhurst,* said, that if they were not distinguishable from the case before him, he "must respectfully dissent from them." So, too, we say, that if they are not distinguishable from this case, they are at war with all the other English decisions; and with a principle well established in the English law, and we must respectfully dissent from them. The authorities, which we have collated, most conclusively show, that the established doctrine in the English chancery does not permit any other conclusion, than that the fund in the hands of Thomas H. Smith is liable to the debts of Wm. G. Smith.

The decision in *Hill and Wife v. McRae,* (27 Ala. 175,) when considered in its entirety, and not in reference to any single sentence, does not support the position, that in this case the trust fund enjoys any immunity from liability to debts. It is in reference to a bequest of property to be held in trust for the support of a man and his wife and.

children.; and the decision is placed upon the ground, that the interest of the debtor was so blended with that of the wife and children, that the former could not be separated and subjected : to--debts without detriment to the latter. And the same doctrine seems to have been recognized in the opinions in *Rugely & Harrison v. Robinson*, 10 Ala. 702. See, also, *Fellows, Wadsworth & Co. v. Tann*, 9 Ala. 999 ; *Spear v. Walkley*, 10 Ala. 328.

The precise question of this case seems to have been involved in the case of *Clark v. Windham*, (12 Ala. 798,) and it is not a strained inference, that an adjudication of it adversely to the appellants is implied in that decision. In the case of *Robertson & Pettibone v. Johnston*, (36 Ala. 197,) we endorsed the doctrine declared by Judge Ormond in *Rugely & Harrison v. Robinson*—"that a beneficial interest cannot be given to one, so that it cannot be reached by his creditors, unless such interest is conferred, and is to be enjoyed, jointly with others, and is also incapable of severance." We but carry out that doctrine, and follow the lead of our former decisions, in declaring that the fund held in trust for William G. Smith is liable to his debts.

We think Wm. G. Smith's right to the fund was equitable, and was liable to attachment in equity under section 2956 of the Code.—*You v. Flinn*, 34 Ala. 409.

Affirmed.